**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
IMIG, INC. *a corporation of the State of New York*,
Nationwide Sales and Services Inc. *a corporation of
the State of New York*, PERFECT PRODUCTS
SERVICE & SUPPLY INC. *a corporation of the State
of New York d/b/a* PERFECT PRODUCTS, INC., and
GUMWAND INC.,

                          Plaintiffs,

             - against -

OMI ELECTRIC APPLIANCE COMPAY CO., LTD.
*a limited corporation of the People's Republic of
China*, and BEIJING CHINA BASE STARTRADE
CO., LTD. *a limited corporation of the People's
Republic of China*,

                        Defendants.
-----------------------------------------------------------------X

**ORDER**
**ON MOTION**

CV 16-628 (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.     **PRELIMINARY STATEMENT**

Pending before the Court is Defendant Omi Electric Appliance Co., Ltd.'s ("Omi")

motion to strike the supplemental initial disclosures served by Plaintiffs Imig, Inc., Nationwide

Sales and Services Inc., Perfect Products Service & Supply Inc., and Gumwand Inc.

(collectively, "Plaintiffs" or "Imig"). *See* Motion to Strike Supplemental Disclosures ("Omi's

Mot.") [DE 104]. Omi also seeks to preclude Imig from "asserting an un-pleaded and untimely

disclosed claim for alleged re-tooling costs." *Id.* at 1. Imig opposes Omi's motion. Response in

Opposition to Defendant's Motion to Strike Supplemental Disclosures and to Preclude Evidence

("Pl's Opp'n") [DE 105].[1] For the reasons which follow, Omi's motion to strike is DENIED.

---

      [1]    With the Court's permission, Omi re-filed their opposition with three exhibits
attached under seal. *See* DE 106; 107; Electronic Order dated December 3, 2019.

II.     BACKGROUND

    A.      **Factual Background**

Imig is in the business of selling vacuum cleaners, steam cleaning devices and relevant

parts in the United States and throughout the world. *See* Amended Complaint ("Am. Compl.")

[DE 54], ¶ 15. Imig acquired their products and "tooling" used to manufacture their products

from companies such as Omi. *Id.* Imig and Omi entered into a Manufacture's Agreement on

September 11, 2014 in which Omi agreed to manufacture goods for Imig and Imig agreed to

reveal confidential information to Omi related to the design and manufacturing of the goods Omi

was to produce. *See id.* ¶ 26; Manufacturer's Agreement [DE 54-2]. Under the Manufacturer's

Agreement, any machine parts, tools, or processes (collectively "Tooling") are the exclusive

property of Imig, and, "should either party terminate the relationship, all tooling and molds shall

remain the exclusive property of Imig; and…shall be turned over to Imig." *See* Manufacturer's

Agreement at 2.

Generally, Imig alleges that Omi used confidential information, trade secret information,

tooling, and Imig's equipment for the manufacture and sale of products for Imig's competitors in

violation of the parties' agreement. *See* Am. Compl. ¶¶ 27-28. Imig asserted causes of action

based upon the Federal Defend and Trade Secrets Act of 2016, breach of contract,

misappropriation of trade secrets, violation of the Unfair Competition Laws and Deceptive Trade

Practices of the State of New York, and conversion. *Id.* ¶¶ 31-51. In addition to damages, Imig

requested injunctive relief which would (1) enjoin and restrain Omi from using any Tooling or

confidential information obtained from Imig for the manufacture of any products, and (2) require

Omi to return Imig's Tooling. *See id.* at 16.

2

B.      Procedural Background

Omi filed a motion to dismiss the Amended Complaint on August 3, 2018. *See* DE 71.

Following Judge Brown's ruling on that motion, Imig's only claim which survived was a cause

of action for breach of contract based on Omi's alleged sale of products made with Imig's

Tooling. *See* Electronic Order dated October 5, 2018 [DE 81]. Omi then filed an answer to the

Amended Complaint and asserted affirmative defenses related to the breach of contract claim.

*See* Omi's Answer and Affirmative Defenses ("Omi's Answer") [DE 86] at 9-10.

On October 18, 2018, Judge Brown[2] implemented a discovery schedule which provided

for fact discovery to be completed by May 10, 2019 and expert discovery by July 31, 2019. *See*

Electronic Order dated October 18, 2019. In January 2019, the parties requested a stay of

discovery for this case and the related consolidated action, CV 16-6617, until February 28, 2019.

*See* DE 88. After the expiration of the stay, the parties proposed a fact discovery deadline of

July 9, 2019 and a deadline to complete expert depositions of October 18, 2019. *Id.* This

application was granted on January 18, 2019. A third request for an extension of the discovery

schedule was filed on June 17, 2019 and was subsequently granted. *See* DE 97. In that request,

among other things, the parties stated they had hoped to complete written fact discovery by

May 28, 2019 but technical difficulties prevented them from meeting that deadline. The parties

agreed to complete document production by July 2, 2019, fact discovery by October 11, 2019,

and expert depositions by December 19, 2019. *See id.* A fourth motion for an extension of time

was filed on September 9, 2019 due to disagreements pertaining to the redaction of documents

which delayed a scheduled deposition for Omi's Rule 30(b)(6) witness. DE 99. The existing

schedule was modified again setting fact discovery at completed by December 3, 2019 and the

---

[2]        This case was reassigned to this Court for all purposes on January 17, 2020.

expert discovery deadline at February 7, 2020. *See id.*; Electronic Order dated September 10,

2019.

On November 22, 2019, Omi filed the instant motion to strike. *See* DE 104. Imig

submitted opposition on December 2, 2019. *See* DE 105. Imig then requested and received

permission to file three of their exhibits under seal. *See* DE 106 (*SEALED*); Electronic Order

dated December 3, 2019; DE 107, attaching Exhibits "A", "B", and "C" (*SEALED*). In a

January 8, 2020 status report to Judge Brown, the parties noted that they were unable to resolve

or narrow the issues raised in Omi's motion to strike. *See* DE 109 at 2. Following the

reassignment to this Court on January 17, 2020, the parties filed a briefing schedule for their

summary judgment motions which was approved. *See* DE 110; January 31, 2020 Electronic

Order. The Court also directed the parties to file a letter and advise whether the pending motion

to strike impacts the anticipated summary judgment motions. *See* January 31, 2020 Electronic

Order. The parties filed separate letters on February 7, 2020 and agree that the motion to strike

would particularly affect Imig's motion for summary judgment. *See* DE 111; DE 112.

## C.      The Supplemental Initial Disclosures

### 1.      *Omi's Motion*

Omi seeks to strike Imig's supplemental initial disclosures and preclude Imig from

asserting a claim for re-tooling costs incurred in 2016. Omi's Mot. at 3. At the outset, Omi

reviews the procedural posture of this case and notes that the original Complaint [DE 1] asserted

one contract claim and three tort claims "arising out of the same set of factual allegations: that

Omi allegedly manufactured vacuum cleaners and parts using Imig's tooling and confidential

information and sold such products to third-parties." Omi's Mot. at 1. Imig's Amended

Complaint filed in May 2018 added a tort claim for misappropriation of trade secrets. *Id.* Imig

then served its Rule 26(a) Initial Disclosures on July 9, 2018 and sought to recover damages as a

result of Omi's alleged sale of products.  *Id.* (citing Imig Parties' Initial Disclosures [DE 104-1]).

As noted above, Omi moved to dismiss the Amended Complaint and, following Judge Brown's

ruling on that motion, Imig's surviving claim was a breach of contract cause of action related to

Omi's sale of products made with Imig's Tooling.  *Id.*  However, Imig's counsel notified Omi's

counsel during a telephone call in August 2019 that Imig would be advancing a new claim for

damages that was previously undisclosed.  *See id.* at 2.  According to Omi, this new claim seeks

damages related to Omi's failure to deliver Tooling in accordance with a provision of the parties'

contract which is different from the surviving claim mentioned above.  *Id.*  Omi notified Imig in

an October 8, 2019 letter that this new "re-tooling" claim was not pled in the Amended

Complaint nor referenced in Imig's Initial Disclosures.  *Id.*  Following the ensuing

correspondence between the parties, Imig served Supplemental Disclosures on October 14, 2019

which included the new re-tooling claim as part of Imig's computation of damages.  *Id.* (citing

Imig's Supplemental Initial Disclosures [DE 104-4]).

Omi argues that a "passing reference in the Amended Complaint's prayer for injunctive

relief pertaining to a since-dismissed tort claim" does not satisfy Rule 26(a) because it does not

mention "Imig's purchase of new tooling or its intention to recover those costs from Omi."  *See*

*id.* at 2.  In a similar vein, Omi further contends that Imig's inclusion of the broad phrase "any

other damages available under the parties' contracts" does not provide sufficient notice of the

new re-tooling claim.  *See id.*  Then, to the extent that Imig argues that its discovery "should

have revealed the Re-Tooling Claim because Imig produced re-tooling invoices and served

discovery requests in May 2019 related to this . . . claim," Omi contends that any alleged lack of

thoroughness in its review of discovery does not alter Imig's obligations under Rule

26(a)(1)(A)(iii). *See id.* at 2.   Consequently, Omi argues that Imig violated Rule 26 because the re-tooling claim was not pled, differs greatly from the damages previously sought, and was untimely disclosed since Imig had notice of this claim at the outset of the case. *See id.* at 3.  Omi submits that it would be prejudiced should the Court permit Imig to assert the re-tooling claim because discovery closed prior to Omi's service of the Supplemental Disclosures and Omi never had an opportunity to respond to a properly pled re-tooling claim nor to serve tailored discovery requests. *See id.*

### 2.   *Imig's Opposition*

Imig asserts that Omi had adequate notice of its damages claim for re-tooling. *See* Imig's Opp'n at 1-3.  Specifically, Imig contends that the Amended Complaint:  "(i) pleads a claim for breach of contract, (ii) attaches the 2014 Contract as Exhibit B, (iii) alleges that Omi failed to return the tooling to Nationwide, and (iv) requests damages sustained by any of the plaintiffs as a result of the 'use' of the tooling." *Id.* at 1-2 (citations omitted).  Imig then argues that its Initial Disclosures set forth "any other damages available under the parties' contracts" and that "Omi did not seek any more specificity." *Id.* at 2.  Next, Imig maintains that the parties exchanged discovery based upon its re-tooling damages theory:

- In August 2018, Nationwide's Responses to Interrogatory 8 included the following fact: "In or about December 2015, The Imig Parties asked the Omi Parties to return the Imig Parties' tooling, but the Omi Parties refused."

- Beginning in April 2019, Nationwide produced the emails between the parties in which Nationwide demanded the Tooling back, and Omi refused to return it.

- Beginning in April 2019, Nationwide also produced Tooling invoices and related documents from its new supplier, as evidence of the amount of damages resulting from the cost of the replacement tooling.

- On May 3, 2019, Nationwide served requests for admission that asked Omi to admit Nationwide had unsuccessfully demanded the return of the Tooling. In response, Omi admitted that it has not returned any Tooling to Nationwide after December 22, 2015.

- On May 15, 2019, Nationwide served a Rule 30(b)(6) deposition notice for Omi that included the topics: "The circumstances surrounding the Nationwide Parties' demands to the Omi Parties for the return of the Nationwide Parties' Tooling" and "With respect to the efforts that the Omi Parties made after December 1, 2015, to deliver any Tooling to the Nationwide Parties, the efforts that the Omi Parties made to transfer Tooling of the Nationwide Parties, and the reasons that the Omi Parties did not make additional efforts to deliver Tooling to the Nationwide Parties."

*See id.* Imig also notes that questions pertaining to re-tooling were directed to Scott and Mark Genoa during their respective depositions on October 15 and October 17, 2019. *See id.* at 3. Lastly, Imig submits that during a meet and confer on August 29, 2019, it "orally explained . . . its damage theory that Omi's breach of its contract to return the tooling caused [it] damages" and that Omi did not raise any issues pertaining to the adequacy of this disclosure until its October 8, 2019 letter. *See id.* at 2. For these reasons, Imig maintains that it has complied with its disclosure obligations and that Omi has suffered no prejudice as a result of any late disclosure. *Id.* at 3.

III.   <u>APPLICABLE LAW</u>

Rule 26(a) of the Federal Rules of Civil Procedure, which discusses the parties' obligations to provide Initial Disclosures, states, in pertinent part, that "a party must, without awaiting a discovery request, provide to the other parties . . . a computation of each category of damages claimed by the disclosing party." Fed. R. Civ. P. 26(a)(1)(A)(iii). The Rule further prescribes that "[a] party must make its Initial Disclosures based on the information then reasonably available to it" and a party is not excused from this affirmative obligation even where another party's disclosures are deficient or have not been provided. *Id.* at 26(a)(1)(E). In

7

addition, disclosures are to be timely supplemented by the disclosing party if it learns that they

are "incorrect or incomplete." *Id.* at 26(a)(1)(A), (e)(1); *see Official Comm. of Unsecured*

*Creditors of Exeter Holdings, Ltd. v. Haltman*, No. CV 13-5475, 2015 WL 9701024, at *3

(E.D.N.Y. Aug. 26, 2015), *report and recommendation adopted*, 2016 WL 183318 (E.D.N.Y.

Jan. 13, 2016); *see also Design Strategy, Inc. v. Davis,* 469 F.3d 284, 294 (2d Cir. 2006)

(recognizing a party's obligation to provide supplemental disclosures as required under

Rule 26(e)); *US Bank Nat. Ass'n v. PHL Variable Ins. Co.*, Nos. 12 Civ. 6811, 13 Civ. 1580,

2013 WL 5495542, at *2 (E.D.N.Y. Oct. 3, 2013).

To remedy abuses in the initial disclosure process, Rule 37(c) provides that where a party

"fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use

that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the

failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). On the other hand,

however, preclusion is a "drastic sanction that 'should be imposed only in rare situations.'"

*Exeter Holdings*, 2015 WL 9701024, at *3 (quoting *Ritchie Risk–Linked Strategies Trading*

*(Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 156 (S.D.N.Y. 2012)). In that regard, the

Second Circuit has opined that not only does the rule itself permit more lenient sanctions to be

imposed, but the district court enjoys wide latitude with respect to the imposition of any such

sanctions. *See Design Strategy*, 469 F.3d at 294.

In order for a party to show that a failure to make adequate Initial Disclosures was

"substantially justified," it must establish that "there is justification to a degree that could satisfy

a reasonable person that parties could differ as to whether the party was required to comply with

the disclosure request, or if there exists a genuine dispute concerning compliance." *Ritchie Risk–*

*Linked Strategies*, 280 F.R.D. at 159 (internal quotation omitted). Likewise, where there is no

prejudice to the other party, any violation is deemed "harmless" within the meaning of the rule. *Id.*; *see U.S. Bank Nat. Ass'n*, 2013 WL 5495542, at *3.

In determining whether a failure to disclose should result in sanctions, courts generally look to the following factors: (1) whether the failure was willful or in bad faith; (2) any prejudice to the party against whom the evidence is offered; (3) the ability to cure any such prejudice; (4) the importance of the evidence; and (5) the extent to which allowing such evidence would disrupt trial proceedings. *US Bank Nat. Ass'n*, 2013 WL 5495542, at *3; *see Ebbert v. Nassau County*, No. 05 CV 5445, 2008 WL 4443238, at *14 (E.D.N.Y. Sept. 26, 2008).

## IV.   DISCUSSION

### A.      Violation of Rule 26(a)(1)(A)(iii)

In its Initial Disclosures dated July 9, 2018, Imig's computation of damages states as follows:

> Damages are due based on the profits of the Omi Parties for any products produced and sold in violation of the rights of the Imig Parties as set forth in the in the Amended Complaint and Amended Answer and Counterclaims in these actions; the profits from all customers who resold such products; the lost profits of the Imig parties resulting from the sale of such products; ***any other damages available under the parties' contracts***; and any applicable punitive damages.

Imig's Initial Disclosures at 7 (emphasis added). Imig relies upon the emphasized language "any other damages available under the parties' contracts" in its opposition to the instant motion, arguing that this disclosure provided Omi adequate notice of its re-tooling damages theory. *See* Imig's Opp'n at 2. However, such a broad, generic reference to "any other damages available under the parties' contracts" is insufficient pursuant to Rule 26(a)(1)(A)'s disclosure requirements. *See Design Strategy*, 469 at 295 ("[N]owhere did [plaintiff] ever disclose 'lost profits' as even a category of damages sought on its Initial Disclosure Statement. Although

[plaintiff's] Complaint does include a generic reference to 'damages[,]' in its Initial Disclosure, [plaintiff] omitted any reference to its own lost profits as a measure of recompense, focusing instead on 'monies earned' by the defendants."); *Curcio v. Roosevelt Union Free School Dist.*, No. 10-CV-5612, 2012 WL 6641715, at *2-4 (E.D.N.Y. Dec. 19, 2012) (finding plaintiff failed to comply with Rule 26(a) and did not disclose pension-related damages where such damages were not identified on initial disclosures).

Next, Imig argues that the Amended Complaint should have put Omi on notice that it would be seeking damages for re-tooling costs. "[A] general demand in a complaint fails to satisfy the requirement of Rule 26(a) that plaintiff provide 'a computation of each category of damages claimed' and 'make available for inspection . . . the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered.'" *Curcio*, 2012 WL 6641715, at *4 (quoting Fed. R. Civ. P. 26(a)(1)(A)(iii)). Plaintiff's breach of contract claim consists of two paragraphs, one of which incorporates by reference all of the preceding paragraphs in the Amended Complaint, and the other which broadly alleges that the Defendants' actions "are breaches of the contracts and agreements they have with the Plaintiffs." Am. Compl. ¶¶ 35-36. In reviewing the Amended Complaint, the Court also notes that while many references are made to "Tooling," the Court was unable to find any allegations related to a claim for "re-tooling" or "replacement tooling." *See generally id.*

Lastly, Imig contends that (1) Omi did not request additional clarification regarding the damages referenced in the Amended Complaint and in its Initial Disclosures, and (2) Omi should have been aware of the re-tooling claim based on the exchange of certain paper discovery referred to in its opposition. *See* Imig's Opp'n at 1-2. However, Imig bears the burden – not

Omi – to adequately disclose its calculation of damages.  *See Columbia Casualty Co. v. Neighborhood Risk Mgmt. Corp.*, No. 14 Civ. 48, 2016 WL 184407, at *3 (S.D.N.Y. Jan. 15, 2016) (stating that the burden is on the party moving for damages to disclose the calculation of damages and that there is no burden on the opposing party to learn of a damages theory in discovery).  Moreover, even if Omi "was not as thorough as it might have been in discovery, an adversary's lack of thoroughness in discovery does not alter the obligation imposed by Rule 26(a)(1)(A)(iii)."  *Id.* (citing *Design Strategy*, 469 F.3d at 293-94).  Accordingly, the Court finds Plaintiff's Rule 26(a)(1)(A)(iii) damages computation, especially with respect to its re-tooling claim, to be inadequate.  *See Design Strategy*, 469 at 295;  *Curcio*, 2012 WL 6641715, at *4.

**B.      Rule 26(e) and the Timeliness of Imig's Supplemental Disclosures**

Omi argues that should the Court find Imig has violated Rule 26(a)(1)(A) by failing to disclose its re-tooling claim, then Rule 26(e) does not apply.  *See* Omi's Mot. at 3.  However, neither of the two cases cited by Omi stand for this proposition.  *See id.* at 3 (first citing *Rienzi & Sons, Inc. v. N. Puglisi & F. Industria Paste Alientari S.P.A.*, No. 08-CV-2540, 2011 WL 1239867, at *3 (E.D.N.Y. Mar. 30, 2011); then citing *Roberts v. Ground Handling, Inc.*, No. 04 Civ. 4955, 2007 WL 2753862, at *3-4 (S.D.N.Y. Sept. 20, 2007)).  In *Rienzi*, the defendant-counterclaimant failed to comply with Rule 26's initial disclosure requirements and, 672 days after the parties' Rule 26(f) conference, attempted to supplement its initial disclosures with a new damages theory.  *Puglisi*, 2011 WL 1239867, at *3.  Prior to determining whether preclusion of the newly asserted damages at issue was proper, the court considered the timeliness of the supplemental disclosure under Rule 37(c)(1).  *See id.* at *3-4.  In *Roberts*, the plaintiff attempted to assert a new damages claim for the first time at trial.  *Roberts*, 2007 WL 2753862, at *4.  The court in *Roberts* did state that the plaintiff's failure to disclose a damages claim which

11

was being asserted for the first time at trial was "alone sufficient to preclude her from submitting evidence of it at trial." *Id.*  However, unlike the instant case, the *Roberts* plaintiff did not even disclose the new damages theory "during the entire discovery phase." *Id.*  The instant case bears more of a resemblance to *Puglisi* than *Roberts*, and so the Court will now consider whether Imig's Supplemental Disclosures were disclosed "in a timely manner" under Rule 26(e).

Pursuant to Rule 26(e), "parties must supplement their initial disclosures under Rule 26(a) . . . 'in a timely manner if the party learns that in some material respect the disclosure or response is incorrect and incomplete.'" *Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 72 (E.D.N.Y. 2012) (quoting Fed. R. Civ. P. 26(e)(1)(A)); *see also Gotlin v. Lederman*, No. 04-CV-3736, 2009 WL 2843380, at *3 (E.D.N.Y. 2009) ("The duty to supplement 'applies whether the corrective information is learned by the client or by the attorney[,]' and is triggered only where 'a party[,] or more frequently [its] lawyer, obtains actual knowledge that a prior response is incorrect.'" (quoting *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 433 (S.D.N.Y.2004)) (alteration in original) (citation omitted)).  "But a party must do so only if that information 'has not otherwise been made known to the other parties during the discovery process or in writing.'" *Lujan*, 284 F.R.D. at 72 (quoting Fed. R. Civ. P. 26(e)(1)(A)).

Here, Imig was unaware that its Initial Disclosures were incomplete with respect to the re-tooling claim until Omi's counsel sent a letter notifying Imig of this issue on October 8, 2019. *See* Omi's Mot. at 2.  Less than one week later, Imig served Supplemental Disclosures on October 14, 2019 which added that the damages available to it under the parties' contracts included "the Imig Parties' costs of replacing the tooling that the Omi Parties failed to return." *See* Supplemental Disclosures at 8; Imig's Opp'n at 2.  Supplemental disclosures have been found to be untimely where they were produced nearly one year after the close of fact discovery.

12

*See Ritchie Risk-Linked Strategies*, 280 F.R.D. at 155, 161 ("Making a supplemental disclosure nearly a year after the close of fact discovery is not 'timely' by any definition." (citing *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 80-81 (W.D.N.Y. 2011))); *see also Gotlin*, 2009 WL 2843380, at \*2-3 (finding untimely the disclosure of medical records by plaintiff's counsel where disclosure occurred one year after expert discovery concluded and one year after counsel initially received such records). That is not the case here where Imig supplemented its Initial Disclosures on October 14, 2019—months prior to the fact discovery deadline of December 3, 2019. There was sufficient time for Omi to either conduct additional discovery on the re-tooling, if Omi determined such discovery was necessary, or to request a further extension of time to complete discovery on Imig's purported re-tooling damages.

It is not lost on the Court that despite the parties' issues with respect to Imig's re-tooling claim, counsel nevertheless proceeded to summary judgment motion practice and did not request a stay of the briefing schedule pending the Court's determination of Omi's motion to strike. At this juncture, discovery has closed and the parties' summary judgment motions have been fully briefed. However, the summary judgment motions have not been filed pending the Court's determination of the parties' motions to seal certain documents included in their motion papers. *See* DE 115; DE 116; July 16, 2020 Electronic Order. The Court will be entering a separate order in the short term regarding the motions to seal. *See* November 10, 2020 Electronic Order.

## V.    CONCLUSION

For the foregoing reasons, Omi's motion to strike Imig's Supplemental Disclosures and to preclude its damages claim for re-tooling is DENIED.

**SO ORDERED.**

Dated: Central Islip, New York
   November 30, 2020

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge